IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOMMY EZQUERDO,<br><br>                Petitioner,<br><br>vs.<br><br>WILLIAM LEE, Superintendent, Green Haven Correctional Facility,<br><br>                Respondent. | No. 9:11-cv-00671-JKS<br><br>MEMORANDUM DECISION |

Tommy Ezquerdo,[1] a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Ezquerdo is currently in the custody of the New York Department of Corrections and Community Supervision, incarcerated at the Green Haven Correctional Facility. Respondent has answered and Ezquerdo has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

Ezquerdo was convicted by a jury in the Oneida County Court of two counts of Murder in the Second Degree (N.Y. Penal Law § 125.25[3]), one count of Murder in the Second Degree (N.Y. Penal Law § 125.25[1]), and one count of Robbery in the First Degree (N.Y. Penal Law § 160.15[1]). In January 2008 the trial court sentenced Ezquerdo to an indeterminate prison term of twenty-five years to life on each of the murder convictions, and a determinate term of twenty-five years on the robbery conviction, all sentences to be served concurrently. The Appellate Division, Fourth Appellate Department, affirmed in a published decision, and the New York

---

[1] In his Petition and in the state courts Petitioner spells his name "Esquerdo." However, on the docket it appears as "Ezquerdo."

Court of Appeals denied leave to appeal on May 26, 2010.[2] Ezquerdo timely filed his Petition for relief in this Court on June 10, 2011.

Because the facts of Ezquerdo's conviction are not necessary to a determination of the Petition in this case, they are not repeated here.

## II. GROUNDS RAISED/DEFENSES

In his Petition Ezquerdo raises three grounds: (1) the trial court erroneously allowed the introduction of a confession; (2) he was denied his right to cross-examine a witness with the aid of a Spanish interpreter; and (3) the failure to electronically record his interrogation denied him due process.[3] Respondent contends that Ezquerdo did not properly exhaust his state-court remedies on his third ground and it is procedurally defaulted. Respondent does not raise any other affirmative defenses.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[2] *People v. Esquerdo*, 897 N.Y.S.2d 565 (App. Div.), *lv. denied*, 929 N.E.2d 1010 (N.Y. 2010) (Table).

[3] Ezquerdo attached his petition for leave to appeal filed with the New York Court of Appeals to his Petition in this Court raising the identical arguments based upon the same facts as were raised before the New York Court of Appeals.

proceeding."[4] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5] The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[6] Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7] When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[8] The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[9] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[10] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial

---

[4] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412 (alteration added).

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[11]  Ezquerdo "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."[12]

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[13]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[14]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[15]  Although pre-AEDPA

---

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Hawkings v. Castello*, 460 F.3d 238, 264 (2d Cir. 2006) (internal quotation marks and citations omitted).

[13] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[14] *Cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . ."); *Jones v. Stinson*, 229 F.3d 112, 118 (2d. Cir. 2000).

[15] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing
(continued...)

precedent established that deference is due to the findings of state appellate courts,[16] the Second Circuit has left the question open with respect to AEDPA cases.[17]  In the absence of a clear indication from the Second Circuit to the contrary, this Court can find no principled reason not to apply the same rule in the context of AEDPA, i.e., findings of a state appellate court are presumed to be correct.

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.[18]  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[19]  A federal court must accept that state courts correctly applied state laws.[20]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[21]  A federal court may not issue a habeas writ based upon a perceived error of state law unless the error is sufficiently egregious to amount to a denial of due process under the

---

[15](...continued) evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[16] *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992).

[17] *See Boyette v. Lefevre*, 246 F.3d 76, 88 n.7 (2d Cir. 2001).

[18] *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).

[19] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[20] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[21] *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).

Fourteenth Amendment.[22]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[23]

## IV.  DISCUSSION

Ground 1:  Admission of Confession into Evidence

Testimony concerning inculpatory statements allegedly made by Ezquerdo and a written English translation of those statements were admitted at trial over the objection of the defense. Ezquerdo contends that these statements should have been suppressed because:  (1) the statements were taken in violation of his right to counsel and (2) he did not make a knowing, voluntary, and intelligent waiver of his constitutional rights.  The Appellate Division disagreed, holding:

> We conclude that County Court properly refused to suppress the oral and written statements that [Ezquerdo] made to police investigators while he was in custody.  It is well settled that the suppression court's credibility determinations and choice between conflicting inferences to be drawn from the proof are granted deference and will not be disturbed unless unsupported by the record.  Here, the court's determination that [Ezquerdo] did not invoke his right to counsel was based solely upon the credibility of the witnesses at the suppression hearing, and we perceive no basis to disturb that determination.
> We further reject the contention of [Ezquerdo] that he was not adequately apprised of his rights and did not fully comprehend them based on his limited understanding of the English language.  It is undisputed that the police gave [Ezquerdo] a *Miranda* form in Spanish that explained his rights, including the right to remain silent and the right to speak to an attorney, and [Ezquerdo] conceded at the suppression hearing that he had no trouble understanding the information on that form.  The record of the suppression hearing thus supports the court's determination

---

[22] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[23] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

> that the waiver by [Ezquerdo] of his *Miranda* rights was knowing, voluntary and intelligent.
>
> To the extent that [Ezquerdo] further contends that the court erred in admitting his written statement in evidence at trial because the People failed to establish that the statement was an accurate transcription of [Ezquerdo's] oral statements, that contention is without merit. The inability of [Ezquerdo] to read his statement in English does not render the statement inadmissible inasmuch as a bilingual officer testified at trial that he translated the statement into Spanish for [Ezquerdo], word for word, and that [Ezquerdo] thereafter signed and initialed the statement. The accuracy of the officer's translation was an issue of fact for the jury.[24]

Ezquerdo misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Where, as in this case, the question is one of credibility, the finding of the finder-of-fact carries the day.[25] Under *Jackson*,[26] the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain the finding.[27] In this case, the Appellate Division, a state court, found that there was sufficient evidence to support the trial court's findings that he was not denied his right to counsel or that he knowingly, voluntarily, and intelligently waived of his constitutional rights. Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution.[28] Ezquerdo bears the burden of establishing

---

[24] *Esquerdo*, 897 N.Y.S.2d at 567-68 (citations and internal quotation marks and alterations omitted).

[25] *See Cavazos v. Smith*, 132 S. Ct. 2, 7 n* (2011) (per curiam); *Bruce v Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

[26] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[27] *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).

[28] *See Jackson*, 443 U.S. at 326.

by clear and convincing evidence that these factual findings were erroneous;[29] a burden Ezquerdo has failed to carry.  The record before this Court does not compel the conclusion that no rational trier of fact could have found that Ezquerdo did not invoke his right to counsel or that he did not knowingly, voluntarily, and intelligently waived his constitutional rights.  Ezquerdo is not entitled to relief under his first ground.

Ground 2:  Denial of Right to Cross-examine

During trial Ezquerdo's written statement translated into English was introduced into evidence.  On direct examination, the officer testified that he read the English statement to Ezquerdo word-for-word in Spanish, and Ezquerdo signed it.[30]  On re-cross-examination the bilingual police officer who prepared the document read it into evidence.[31]  Thereafter the following occurred.

> MR. LEONARD:  Judge, with the Court's permission, I'd like to put this on the overhead and ask Officer Marcano to read in Spanish word for word, translate English to Spanish so that the jury can follow what has been identified as Exhibit DD.
> MR. DEMARCHE:  I object to that, Your Honor.
> THE COURT:  And the purpose of this?
> MR. LEONARD: Our whole theory, one of the theories is the translation wasn't that good, that he didn't know what he was actually signing because it's in English.  He testified that he's fluent in speaking Spanish back and forth, and we'd like to see how good his translation actually is.  As he's talking in Spanish, we can have Miss Walker say it in English and we can see how close of an interpretation does come back because it wasn't taped.  This is the only other way to verify what was actually said or read back to him.

---

[29] 28 U.S.C. § 2254(e)(1).

[30] Docket No. 18-10 at 77-70.

[31] Docket No. 18-10 at 100-08.  The document was introduced as Exhibit 97.  A copy of the same document was marked as Exhibit DD but was not introduced into evidence.  This copy marked Exhibit DD was the document that the officer read.

> THE COURT:  How is a jury going to make that determination as he's reading it in Spanish?
> MR. LEONARD:  He'll read it in Spanish, Miss Walker will translate it in English.
> THE COURT:  No, Miss walker isn't going to translate anything to this jury. She is with your defendant and that's where she's going to stay.
> MR. LEONARD:  Well, can we get another interpreter here?
> THE COURT:  Go ahead. Go find one.
> MR. LEONARD:  Can we take a break?
> THE COURT:  This is your idea.  No, we're not going to take a break.
> MR. LEONARD:  Well
> THE COURT: You've had months to prepare for this trial.
> MR. LEONARD:  That's right.  I'm not in charge of getting the interpreters, Judge.  There's no more interpreters around that I can get.
> THE COURT:  Then move on, Mr. Leonard, move on.
> MR. LEONARD:  Could I have the other interpreter interpret?
> THE COURT:  No. Mr. Kimball has a responsibility, and that is to Mr. Hernandez.  That is going to remain his sole responsibility.
> MR. LEONARD:  Your Honor, if I could just be heard one more -- one more item on there.  I could not use Mr. Colon.  I was told not to.
> THE COURT:  I'm not interested in what you can't do.  I'm interested in what you did do over the last however many months you've had to prepare for the trial.
> MR. LEONARD:  I don't understand why she would not be able to interpret back if he's speaking English or Spanish, my client will understand that.
> THE COURT:  The question is who is going to do anything for this jury? You're asking this witness to read something now, to translate it back from English to Spanish.  We don't know if any of these jurors understand Spanish.  And what meaning is that testimony going to have for them?
> MR. LEONARD:  That's the thing, Judge. Officer Marcano could translate back to Spanish. Miss Walker could translate from Spanish to English exactly what Officer Marcano is saying.  And with this on the overhead, we can all be following along of what he's actually reading and see how close of a translation it is.  It was our theory that he doesn't speak that well enough Spanish.
> THE COURT:  I'm going to deny your request.
> MR. LEONARD:  Nothing further, Judge.[32]

Ezquerdo contends that the trial court's refusal to allow the aid of a court-certified interpreter in his cross-examination of the officer somehow precluded him from effectively cross-

---

[32] Docket No. 18-10 at 109-12.

examining the officer, thereby violating his right of confrontation. The Appellate Division rejected Ezquerdo's argument:

> Also without merit is the contention of [Ezquerdo] that his right of confrontation was violated when the court erred in refusing to permit him to utilize the services of his interpreter or his co-defendant's interpreter during re-cross-examination of the bilingual officer, to challenge the accuracy of the officer's translation of [Ezquerdo's] written statement. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish" (*Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15). Here, the record establishes that [Ezquerdo] had the opportunity for effective cross-examination to challenge the accuracy of the officer's translation or any alleged deficiencies in the officer's ability to speak and comprehend Spanish. Indeed, the court merely precluded [Ezquerdo] from utilizing a particular method of cross-examining the officer that could have, inter alia, delayed the trial, confused the jury, and obscured the relevant issues [citations omitted].[33]

First, the question to the extent that it is posed as either a violation of the right to confrontation or the right to effective cross-examination, misstates the question. What was at issue was the witness's competence to testify regarding the translation, i.e., was the officer sufficiently versed in Puerto Rican Spanish to accurately translate what Ezquerdo said in Spanish to English. In no way was Ezquerdo precluded from delving into the officer's background, training, or experience with respect to his ability to accurately translate from Spanish to English. Nor was he precluded or hindered in any way in cross-examining the officer on the circumstances surrounding the taking of the statement, or its translation and commitment to written form. Thus, it cannot be said Ezquerdo was denied his right to either confront or cross-examine the witness on his qualifications or abilities or the circumstances surrounding the taking of Ezquerdo's statement.

---

[33] *Esquerdo*, 897 N.Y.S.2d at 568 (emphasis in the original).

Under Ezquerdo's request the officer would read the statement out loud to the jury, translating it into Spanish, while the interpreter simultaneously translated the officer's Spanish back into English, again orally to the jury, with the jury following along the English version that was displayed on an overhead view. What he was denied was the right to administer an oral "test" of the witness's abilities in front of the jury. This, the Appellate Division noted, would have delayed the trial, confused the jury, and obscured relevant issues. Thus, the actual question posed is whether the trial court abused its discretion in refusing to permit Ezquerdo to pursue the avenue of cross-examination he proposed.

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."[34] "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."[35] In criminal actions, "[t]he States are free to provide such procedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in Federal Constitution."[36] The Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.[37]

---

[34] *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).

[35] *McGuire*, 502 U.S. at 72 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983)) (internal quotation marks omitted).

[36] *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967).

[37] *McGuire*, 502 U.S. at 72 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

In this context, the Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly, limiting them to specific guarantees enumerated in the bill of rights.[38] For example, the Supreme Court has barred the introduction of evidence in State criminal proceedings that violated the Fourth Amendment (search and seizure),[39] Fifth Amendment (confessions),[40] Sixth Amendment (Confrontation Clause),[41] and (right to counsel).[42] In deciding cases involving the Federal Rules of Evidence or federal evidentiary statutes, the Supreme Court is acting in its supervisory capacity over the lower federal courts.[43] None of these transgressions is presented in this case. "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[44]

Federal Rule of Evidence 403 permits the exclusion of evidence if its probative value is "outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment

---

[38] *McGuire*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

[39] *Mapp v. Ohio*, 367 U.S. 643 (1961).

[40] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[41] *Crawford v. Washington*, 541 U.S. 36 (2004); *Pointer v. Texas.*, 380 U.S. 400 (1965) (transcript of preliminary hearing without assistance of counsel to confront and cross-examine absent witness inadmissible).

[42] *Burgett*, 389 U.S. at 114-15 (evidence of prior conviction obtained in violation of Sixth Amendment right to counsel inadmissible).

[43] *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006).

[44] *Id.* (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

under Rules 401 and 403 . . . ."[45] New York employs a similar rule.[46] The Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief. Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.[47]

Ezquerdo has failed to present a question of constitutional magnitude. Accordingly, he is not entitled to relief under his second ground.

Ground 3: Failure to Electronically Record Interrogation

Ezquerdo's interrogation by the police was not electronically recorded. Ezquerdo contends this denied him due process. In rejecting Ezquerdo's argument the Appellate Division held that there was "no Federal or State due process requirement that interrogations and confessions be recorded."[48] Ezquerdo has not cited any decision of the Supreme Court or the Second Circuit holding that due process requires that the police electronically record interrogations or confessions, and independent research by this Court has not revealed any such decision. Ezquerdo's reliance on decisions by the Alaska and Minnesota Supreme Courts[49] is misplaced. Because Supreme Court decisions on the issue are lacking, Ezquerdo is not entitled

---

[45] *United States v. Abel,* 469 U.S. 45, 54 (1984).

[46] *People v. Scarola*, 525 N.E.2d 728, 732 (N.Y. 1988).

[47] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of discretion for her to have done so—the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law. § 2254(d)(1)").

[48] *Esquerdo*, 897 N.Y.S.2d at 568.

[49] *Stephan v. State*, 711 P.2d 1156 (Alaska 1985); *State v. Scales*, 518 N.W.2d 587, 592 (Minn. 1994).

to federal habeas relief under his third ground.[50] Because Ezquerdo's claim is meritless, this Court need not reach the failure to exhaust issue raised by the Respondent.[51]

## V. CONCLUSION AND ORDER

Ezquerdo is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[52] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[53]

The Clerk of the Court is to enter judgment accordingly.

Dated: October 10, 2012.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
United States District Judge

---

[50] *Musladin*, 549 U.S. at 77 (2006); *see Van Patten*, 552 U.S. at 127.

[51] 28 U.S.C. § 2254(b)(2); *see Rhines v. Weber*, 544 U.S. 269, 277 (2005).

[52] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).

[53] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.1.